1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>                                     Plaintiff,<br><br>v.<br><br>JOHN DOE, Subscriber Assigned IP<br>Address 68.7.209.22,<br><br>                                     Defendant. | Case No.:  23-cv-01971-H-JLB<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO RULE 26(f) CONFERENCE**<br><br>**[ECF No. 4]** |

Before the Court is an *Ex Parte* Application for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference ("Motion") filed by Plaintiff Strike 3 Holdings, LLC ("Plaintiff").  (ECF No. 4.)  No opposition has been filed, as no defendant has been named or served in this case.  For the reasons set forth below, Plaintiff's *ex parte* Motion is **GRANTED**.

I.      **BACKGROUND**

This is one of the numerous cases filed by Plaintiff alleging copyright infringement claims against a John Doe defendant using the BitTorrent file-sharing system.[1]  Plaintiff

---

[1]      From January 2020 to date, Strike 3 Holdings, LLC, has filed over one hundred cases, including this one, in this District.

1

alleges that it is the copyright owner of motion pictures distributed through adult content websites *Blacked*, *MILFY, Tushy*, *Tushy Raw*, *Vixen*, *Blacked Raw*, and *Slayed*.  (ECF No. 1 ¶¶ 2–3.)  Plaintiff alleges that between April 26, 2022, and August 24, 2023,[2] the person or entity assigned Internet Protocol ("IP") address 68.7.209.22 illegally downloaded and distributed fifty-one of Plaintiff's motion pictures through his, her, or its use of the online BitTorrent file distribution network.  (*Id.* ¶¶ 4–5, 18–47; ECF No. 1-2.)  Plaintiff commenced this action against Defendant "John Doe, subscriber assigned IP address 68.7.209.22" on October 25, 2023, alleging a single cause of action of direct copyright infringement.  (ECF No. 1 ¶¶ 48–53.)

Because Defendant used the Internet to commit the alleged infringement, Plaintiff alleges that it knows Defendant only by his, her, or its IP address, which was assigned to Defendant by the Internet Service Provider ("ISP"), Cox Communications ("Cox").  (*Id.* ¶¶ 5, 13.)  In the instant Motion, Plaintiff asserts that Cox is the owner of Defendant's IP address, and thus, "is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity."  (ECF No. 4-1 at 7.)  Plaintiff therefore seeks leave to serve a Rule 45 subpoena on Cox requesting the true name and address associated with IP address 68.7.209.22.  (*Id.* at 7–8.)  Without Defendant's identity, Plaintiff cannot serve Defendant and prosecute this case.  (*Id.* at 8.)

## II.   LEGAL STANDARD

Discovery is not permitted before the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f) unless authorized by court order.  Fed. R. Civ. P. 26(d)(1). "[H]owever, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts

---

[2]   Plaintiff does not specifically allege this infringement period in the Complaint. However, attached as an exhibit to the Complaint is a table reflecting that the subscriber assigned IP address 68.7.209.22 engaged in allegedly infringing activity between April 26, 2022, and August 24, 2023.  (ECF No. 1-2.)

necessary to permit service on the defendant." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999).  Requests to conduct discovery prior to a Rule 26(f) conference are granted upon a showing of good cause by the moving party, which may be found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002).  "A district court's decision to grant discovery to determine jurisdictional facts is a matter of discretion." *Columbia Ins. Co.*, 185 F.R.D. at 578.

District courts in the Ninth Circuit apply a three-factor test to determine whether good cause exists to allow for expedited discovery to identify a Doe defendant. *Id.* at 578–80.  "First, the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that [the] defendant is a real person or entity who could be sued in federal court." *Id.* at 578.  Second, the plaintiff "should identify all previous steps taken to locate the elusive defendant" to ensure that the plaintiff has made a good faith effort to identify and serve process on the defendant. *Id.* at 579.  Third, the plaintiff "should establish to the Court's satisfaction that [the] plaintiff's suit against [the] defendant could withstand a motion to dismiss." *Id.*  "Lastly, the plaintiff should file a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about [the] defendant that would make service of process possible." *Id.* at 580.

## III.   DISCUSSION

### A.   Identification of Missing Party with Sufficient Specificity

For the Court to grant Plaintiff's Motion, Plaintiff must first identify Defendant with enough specificity to enable the Court to determine that Defendant is a real person or entity who is subject to the Court's jurisdiction. *See Columbia Ins. Co.*, 185 F.R.D. at 578.  The Court finds that Plaintiff has met this burden.

Courts in the Ninth Circuit have determined that "a plaintiff identifies Doe defendants with sufficient specificity" in cases like the instant case "by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP addresses to a physical point of origin." *808 Holdings, LLC v. Collective of December 29, 2011 Sharing Hash E37917C8EEB4585E6421358FF32F29C D63C23C91*, No. 12-cv-00186-MMA-RBB, 2012 WL 12884688, at *4 (S.D. Cal. May 8, 2012); *see also Pink Lotus Entm't, LLC v. Does 1–46*, No. C-11-02263, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011) (finding that the plaintiff met its burden to identify the Doe defendants with sufficient specificity by identifying the Doe defendants' IP addresses and then using geolocation technology to trace the IP addresses to a point of origin).

Here, Plaintiff has sufficiently demonstrated that Defendant is a real person or entity likely subject to the Court's jurisdiction. Plaintiff attached to its Complaint a table reflecting that the subscriber assigned IP address 68.7.209.22 engaged in allegedly infringing activity between April 26, 2022, and August 24, 2023, in Chula Vista, California. (ECF No. 1-2.) To substantiate these claims, Plaintiff attached four declarations to the instant Motion.

Plaintiff first attached the Declaration of David Williamson, an independent contractor hired by Plaintiff as an Information Systems and Management Consultant. (ECF No. 4-2 at 1–15 ("Ex. A").) Mr. Williamson states that he "oversaw the design, development, and overall creation of the infringement detection system called VXN Scan[,] which [Plaintiff] both owns and uses to identify the IP addresses used by individuals infringing Plaintiff's movies via the BitTorrent protocol." (Ex. A ¶ 40.) Mr. Williamson's declaration explains in detail how VXN Scan operates and its six components. One component of VXN Scan is a proprietary BitTorrent client that emulates the behavior of a standard BitTorrent client by repeatedly downloading data pieces from peers within the BitTorrent network that are distributing Plaintiff's movies. (*Id.* ¶¶ 52–56.) Another component of VXN Scan is the PCAP Recorder, which records infringing BitTorrent

23-cv-01971-H-JLB

computer transactions in the form of PCAPs, or packet captures.  (*Id.* ¶¶ 57–70.)  The PCAPs contain the IP addresses that connect to the Proprietary Client and send pieces of the computer file containing an infringing copy of one of Plaintiff's movies to the Proprietary Client through the BitTorrent network.  (*Id.* ¶¶ 57–59.)  Not only do PCAPs record the IP addresses used in the network transaction, but they also record the date and time of the transaction, the port number used, and the BitTorrent client used to accomplish each transaction.  (*Id.* ¶ 61.)  PCAPs also identify the "Info Hash value that was used to obtain the transacted piece."  (*Id.* ¶ 62.)  This information identifies the data that was shared in the recorded transaction as part of a file containing an infringing copy of one of Plaintiff's movies.  (*Id.*)  This Order touches on only two of the components of VXN Scan, but Mr. Williamson's eighty-one-paragraph declaration sets forth additional, in-depth details of all six components of the system, providing the Court with a thorough understanding of how the system reliably identifies the IP addresses assigned to individuals infringing Plaintiff's movies and verifies the infringement.  (*See id.* ¶¶ 43–51, 63–81.)

Second, Plaintiff attached the Declaration of Patrick Paige, a computer forensics expert Plaintiff retained to analyze and retain evidence captured by VXN Scan. (ECF No. 4-2 at 16–22 ("Ex. B").)  Mr. Paige explains that VXN Scan "recorded numerous BitTorrent computer transactions between the system and IP address 68.7.209.22 in the form of PCAPs."  (Ex. B ¶ 13.)  Mr. Paige states that, using a program called Wireshark, he viewed and analyzed a PCAP he received from Plaintiff and was able to confirm that on August 24, 2023, "IP address 68.7.209.22 uploaded a piece or pieces of a file corresponding to hash value 1149632029B2203A09EF6DB1B644D4E0F5F00FE5 to VXN Scan." (*Id.* ¶¶ 16–19.)  The hash value, or Info Hash, is the data used by BitTorrent to identify and locate other pieces of a desired file; in this case, the desired file contained an infringing copy of one of Plaintiff's movies.  (*Id.* ¶ 22; *see also* ECF No. 1-2 at 1.)  Based on his experience in similar cases, Mr. Paige opines that Cox, Defendant's ISP, "is the only entity that can correlate the IP address [68.7.209.22] to its subscriber and identify Defendant as

the person assigned [this] IP address . . . during the time of the alleged infringement." (Ex. B ¶ 28.)

Third, Plaintiff attached the Declaration of Susan B. Stalzer, an employee of Plaintiff's who verified that each digital file VXN Scan received through its transactions with IP address 68.7.209.22 was identical, strikingly similar, or substantially similar to one of Plaintiff's original copyrighted works. (ECF No. 4-2 at 23–26 ("Ex. C").) To do so, Ms. Stalzer viewed each of the digital media files side-by-side with Plaintiff's original films. (Ex. C ¶¶ 8–10.)

Last, Plaintiff attached the Declaration of Emilie Kennedy, Plaintiff's in-house General Counsel. (ECF No. 4-2 at 27–30 ("Ex. D").) Ms. Kennedy explains that after Plaintiff received data from VXN Scan identifying IP address 68.7.209.22 as infringing its movies, "the IP address was automatically inputted into Maxmind's Geolocation Database" on April 27, 2022.[3] (Ex. D ¶ 4.) "Maxmind [then] determined that the IP address traced to a location in San Marcos, California, which is within this Court's jurisdiction." (*Id.* ¶ 5.) Ms. Kennedy states that Plaintiff inputted IP address 68.7.209.22 again into the Maxmind Database "[p]rior to filing its Complaint" and "before filing [her]

---

[3]    Mr. Williamson provides in his declaration that:

> Maxmind is "an industry-leading provider of IP intelligence and online fraud detection tools." "Over 5,000 companies use GeoIP data to locate their Internet visitors and show them relevant content and ads, perform analytics, enforce digital rights, and efficiently route Internet traffic." Maxmind is not "software" or technology, but . . . a database. Maxmind compiles information it receives from Internet Service Providers (ISPs) containing the city and state locations of the users of the ISPs and their respective IP addresses. Maxmind maintains and updates this list weekly and sells access to it.

(Ex. A ¶ 77 (footnotes omitted).)

[D]eclaration,"[4] and both times the IP address "continued to trace to this District." (*Id.* ¶¶ 6–7.)  In its Motion, Plaintiff argues that this Court has previously "accepted Maxmind's findings for purposes of allowing expedited discovery." (ECF No. 4-1 at 13 (citing *Strike 3 Holdings, LLC v. Doe*, No. CV 17-2317-JAH (BLM), 2017 WL 6389848, at *2 (S.D. Cal. Dec. 14, 2017)).)

Based on Plaintiff's IP address tracing efforts, the timing of its efforts, and Plaintiff's continued tracing of IP address 68.7.209.22 to locations within San Diego County, the Court concludes that Plaintiff has met its evidentiary burden of identifying Defendant with sufficient specificity and has shown that Defendant's IP address likely relates to a physical address within the Court's jurisdiction.

### B.    Previous Attempts to Locate Defendant

Plaintiff must next identify all steps it took to locate Defendant to ensure the Court that it has made a good-faith effort to identify and serve process on Defendant. *See Columbia Ins. Co.*, 185 F.R.D. at 579.  The Court finds that Plaintiff has met this burden.

In its Motion, Plaintiff states that it has diligently attempted to locate Defendant by searching for Defendant's IP address using online search engines and "various web search tools." (ECF No. 4-1 at 14.)  Plaintiff has also "review[ed] numerous sources of authority," such as "legislative reports, agency websites, informational technology guides, [and] governing case law" regarding whether it is possible to identify such a defendant by other means and has "discussed the issue at length with computer investigators and cyber security consultants." (*Id.*)  Plaintiff argues that it cannot determine any other means of obtaining Defendant's identity other than through subpoenaing the information from Defendant's ISP, as it has "exhausted all other alternatives for identifying Defendant." (*Id.*)

---

[4]    Before filing her declaration, Ms. Kennedy inputted the IP address into the Maxmind Database again and it traced to Chula Vista, California, which is also in this District. (*Id.* ¶¶ 7–8.)

Further, as discussed above, Plaintiff retained Mr. Paige, a computer forensics expert, who analyzed the data captured by VXN Scan and was able to determine that IP address 68.7.209.22 was engaged in the allegedly infringing activity on August 24, 2023. (*See* Ex. B ¶¶ 13–26.)  Mr. Paige also opined that Defendant's ISP is the only entity that can correlate IP address 68.7.209.22 to its subscriber and identify Defendant as the person assigned this IP address during the time of the alleged infringement.  (*Id.* ¶ 28.)

Based on the foregoing, the Court is satisfied that Plaintiff has attempted in good faith to locate Defendant and that Plaintiff cannot, on its own, identify Defendant with any greater specificity than as the subscriber assigned by Cox to IP address 68.7.209.22. Accordingly, the Court finds that Plaintiff has made a good-faith effort to identify and locate Defendant before filing the instant Motion.

## C.  Whether Plaintiff's Complaint Could Withstand a Motion to Dismiss

Lastly, Plaintiff must establish that its Complaint could survive a motion to dismiss. *Columbia Ins. Co.*, 185 F.R.D. at 579.  The Court finds that Plaintiff has met this burden.

Plaintiff's Complaint alleges a single cause of action against Defendant: direct copyright infringement.  (ECF No. 1 ¶¶ 48–53.)  To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To state a claim of direct copyright infringement, a plaintiff "must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act."  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing 17 U.S.C. § 501(a) (2003)).  "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant."  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).

In the Complaint, Plaintiff alleges to be the owner of the copyrighted movies or "[w]orks" at issue and asserts that each work was registered with the United States Copyright Office.  (ECF No. 1 ¶¶ 2, 46.)  Exhibit A to the Complaint shows the hash values

of the purportedly infringed works and the copyright registration number for each of the works that correspond with those hash values.  (ECF No. 1-2.)  Plaintiff further alleges that Defendant is the user behind IP address 68.7.209.22 who used the BitTorrent file network to "illegally download and distribute Plaintiff's copyrighted motion pictures" and that the infringement was "continuous and ongoing."  (ECF No. 1 ¶¶ 13, 29, 45.)  Lastly, Plaintiff alleges that "[a]t no point in time did [it] authorize, permit or consent to Defendant's copying, distribution, performance and/or display of its Works, expressly or otherwise." (*Id.* ¶ 51.)

The Court finds that Plaintiff has alleged a prima facie case of direct copyright infringement and therefore, its Complaint would likely withstand a motion to dismiss by Defendant.

### D.    Specific Discovery Request

Finally, before the Court grants Plaintiff's Motion, Plaintiff "should file a request for discovery with the Court."  *Columbia Ins. Co.*, 185 F.R.D. at 580.  Plaintiff has not provided the Court with a proposed subpoena, but the Court has sufficient information to determine that "there is a reasonable likelihood that [a subpoena] will lead to identifying information about [D]efendant that would make service of process possible."  *Id.*  Plaintiff states that it plans to issue a subpoena upon Cox, Defendant's ISP, requesting "only the true name and address" of Defendant, the subscriber of IP address 68.7.209.22.  (ECF No. 4-1 at 7–8.)  Further, Plaintiff provides that Cox is the only entity that can identify Defendant by his, her, or its IP address.  (Ex. B ¶ 28.)  Accordingly, the Court finds that Plaintiff need not file the proposed subpoena with the Court.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds good cause to grant Plaintiff leave to serve a Rule 45 subpoena upon Cox in advance of the Rule 26(f) conference.  However, despite Plaintiff's representations of good faith (ECF No. 4-1 at 9–10), the Court shares the concern noted by other courts in this District of "'unscrupulous tactics [being] used by certain plaintiffs, especially in the adult film industry, to shake down the owners of IP

addresses' to exact quick and quiet settlements from possibly innocent defendants who pay out only to avoid potential embarrassment." *Malibu Media, LLC v. Doe*, No. 16-cv-00786-JLS-NLS, 2016 WL 9488778, at *4 (S.D. Cal. May 6, 2016) (quoting *Malibu Media, LLC v. Does 1–5*, No. 12 Civ. 2950(JPO), 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012)). The Court therefore finds that a limited protective order is necessary to protect Defendant's privacy.  Further, Plaintiff has invited the Court to issue a protective order establishing procedural safeguards, "should the Court find such procedures to be appropriate."  (ECF No. 4-1 at 18.)  Accordingly, the Court **GRANTS** Plaintiff's *ex parte* Motion (ECF No. 4) and **ORDERS** as follows:

1.    Plaintiff may serve on Cox a subpoena, pursuant to and compliant with the procedures of Federal Rule of Civil Procedure 45, seeking only the name and address of the subscriber assigned IP address 68.7.209.22 for the relevant time period of the alleged infringement.  Plaintiff shall not seek from Cox any other personally identifiable information about the subscriber.

2.    Plaintiff's subpoena to Cox must provide a minimum of forty-five (45) calendar days' notice before any production responsive to the subpoena shall be made to Plaintiff.

3.    At the time Plaintiff serves its subpoena on Cox, Plaintiff shall also serve on Cox a copy of this Order.

4.    Within fourteen (14) calendar days after service of the subpoena, Cox shall notify the subscriber assigned IP address 68.7.209.22 that his, her, or its identity has been subpoenaed by Plaintiff and shall provide the subscriber a copy of this Order with the required notice.

5.    The subscriber whose identity has been subpoenaed shall have thirty (30) calendar days from the date of such notice to challenge Cox's disclosure of his, her, or its name and address by filing an appropriate pleading with this Court contesting the subpoena.

///

6.    If Cox seeks to modify or quash the subpoena, it shall do so as provided by Federal Rule of Civil Procedure 45(d)(3).

7.    In the event a motion to quash, modify, or otherwise challenge the subpoena is brought properly before the Court, Cox shall preserve the information sought by the subpoena pending the resolution of any such motion.

8.    Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on Cox for the purpose of protecting and enforcing Plaintiff's rights as set forth in the Complaint (ECF No. 1).  If Defendant wishes to proceed anonymously, Plaintiff may not release any identifying information without a court order allowing the release of the information.

**IT IS SO ORDERED.**

Dated:  November 17, 2023

Hon. Jill L. Burkhardt
United States Magistrate Judge